171941 Jane Doe v. Brown University, et al. Thank you. Ms. Murphy, good morning. Good morning, Your Honor. My name is Wendy Murphy. I'm here on behalf of the appellant, Jane Doe. I'd like to reserve two minutes for rebuttal. You may. The court below, the district court, ruled that Jane Doe has no cause of action whatsoever, simply because she is not a person under the meaning of Title IX. In so doing, the court ignored the plain language of Title IX and leading precedent, Canon v. University of Chicago in particular, which addresses the right to sue question. We addressed it at length in the brief, and I don't necessarily plan to go through all the details of the Canon factors, in part because defendants don't oppose our analysis of Canon. But I think what's important about the characterization of this case by the court below is that it's described as an expansion. That our request that Jane Doe have a right to sue is described as an expansion of Title IX simply because she was a student at a school other than Brown University where she was brutally gang raped and drugged on campus by Brown University students. The court below characterized our suggestion that Title IX gives her a right to sue because she is a person, and that's what Title IX says about who's covered. As an expansion, because Title IX in fact only protects students, not just students, but only students of the university where the sex-based harm occurred. Let's assume for a moment that we don't think it's limited to just students, right? Suppose you've got an applicant applying to the college, or you've got someone who wants to attend a lecture series on the college campus. Even then, if we make those assumptions, there's no allegations in the complaint that your client was in any way deterred from availing herself of any of the programs or activities of Brown University as a result of the university's actions in following up or not adequately following up on the rape. So as I read the complaint, what you're saying is she was deterred from availing herself of programs and activities at another college. That's the tricky nexus that seems to be more of a problem in my view. Respectfully, I'd like to re-characterize your description of what's required under Title IX. I think you're saying two different things. One is did it cause harm to her educational status and experience, and of course it did. She ended up withdrawing from Providence College. That's certainly a negative effect. But in terms of what Title IX expressly covers, there are three types of discrimination that are separately covered. One is discrimination in admissions. We don't allege that, and that would certainly apply if we were saying that Brown discriminated under that category. The second is discrimination in the denial of benefits and services. I would argue that that shouldn't necessarily be limited to only Brown University students, but that may be for another day. We're not making that claim either. Our claim is under the third category, which is discrimination subject to discrimination under the funding recipient. That's a separate basis for liability. It's a separate type of claim. And it doesn't matter that she didn't receive benefits or services from Brown University because that's not required under that third prong of liability, which is very clear in 1681A. But how was she subject to discrimination under? Because, Your Honor, the brutal rape she suffered was on Brown University's campus and was committed by three of Brown University's students. But I thought you weren't arguing for vicarious liability for the rape itself. That rape is absolutely a form of sex discrimination. In fact, it is the most severe expression of sex discrimination. But I thought, as I read, maybe I misread your complaint in your brief, but I didn't see in there a claim that Brown should be held liable for the rape. It seemed to me you were making a claim that Brown should be held liable for not adequately dealing with the students after the rape. That's certainly some of the factors that we've alleged, but no, our theory is that they are absolutely responsible for sex discrimination that occurs under their activities and programs, and this was under their activities and programs. And the expression of what constitutes under programs and activities of the funding recipient is substantial control. That's the tort standard, if you will, under Davis. There has to be, in terms of exposing the school to liability. Ms. Murphy, I read your complaint the same way that Judge Keada did. So let's put aside the responsibility for the rape just for a moment and turn to your claim that it was discrimination in the school's inadequate response to the notice that it received that she had been raped and the information she provided. Would you explain to me how that discipline body issue is subjected to discrimination under any program or activity? I'm not sure I understand the question. Your case seems to fall, or at least Brown has argued it falls into two categories. One is the rape. The other is the failure to do something about the rape. Just for a moment, accept that characterization. As to the second part of it, how is that subjected to discrimination under any program or activity at Brown? Well, Davis v. Monroe is clear that it is part of the responsibility in the aftermath of sexual discrimination when it occurs in the form of sexual harassment, which this certainly was, that the school must not be deliberately indifferent. Okay, so your claim is that there was deliberate indifference in their failure to carry forward on their student discipline code. Well, we make two types of claims and in a couple of different styles. We make an intentional discrimination claim and a deliberate indifference claim. They're different. We argue that they were intentionally discriminatory. What was the mere failure to do something? You don't allege that sexual harassment, rape, is treated differently under the discipline code than other things. We do, Your Honor. Yes, we do. You allege that there's their own policy. Our allegation is very clear that their policy covers sex discrimination in the form of this extreme expression, sexual violence. Their policy on sex misconduct covers the same types of harms that are covered by Title IX. And because their policy doesn't comply with the standards that are required to be applied under Title IX, that that is intentional discrimination. We're not saying they didn't comply with Title IX and that's it, because that would be an inadequate basis for a claim. We're saying their policy is discriminatory because it subjects only sex-based harms to different treatment compared to all other civil rights harms on campus. Okay, this is your Title IX versus Title VII argument? Title VI. Title VI. Correct. Their policy segregated out and subjected only sex-based civil rights harms to different and worse treatment compared to harms covered by Title VI. Just carry it out for me. What is the difference in treatment? Well, the two key differences in substantive treatment, there are lots of procedural differences as well. Procedural difference would be, for example, that they require... Let's talk about the substantive differences. So two key substantive claims that we allege are, number one, they do not require equitable treatment. That is mandatory under the Title IX regulations. Also, they use definitions of offenses that are more onerous than the definition of a Title IX offense, which is unwelcome and offensive and based on sex. And then in terms of what sexual harassment is... What is the causation rank? I thought your complaint was they never got back to Jane Doe to say that we have actually disciplined. I don't see what these difference in standards have to do, in a causal sense, with the harm you're alleging. So in the so-called pre-assault context, when you have announced to your student body that you subject harms based on sex to separate, different, and worse treatment, you have, in a sense, increased the risk that sex-based harms will occur. I'm sorry, there's a claim that that difference led to the rape? Increase the risk, Your Honor. That's the standard. There's no need to prove direct causation. We only need to show that there was an increased risk. We have a separate claim for deliberate indifference, and that is all about how they did not respond and or what they did do was not only inconsistent with timeline, but woefully inadequate and clearly deliberately indifferent. For example, they did nothing at all for four months after they became aware, and it was another three months before they even mentioned the possibility of conducting any kind of an investigation, and then they did nothing. I know what the complaint says. I want to go back to Judge Kayada's initial question to you. You never allege that she wanted to be on the Brown campus for educational reasons after the rape, but she was deterred from doing so because of the school's inadequate response to the rape. Let's assume you're right that the district court too narrowly construed this to apply only to students. But what about, say, she wanted to go to the museum or she wanted to go to the research library? There is no allegation of that sort. So we're not, I think, talking about access to an educational program at Brown. So what are we talking about? Right, so as I responded to the first time that question was made, and I'll try to be clearer... Yes, it would be good rather than reminding me that you've already responded once. No, what I'm trying to say, Your Honor, is I'm sorry if I wasn't clear. I'll try to be more clear. We are not alleging that she was denied access to anything at Brown University with regard to their education programs or activities. That's not the claim. I'm sorry. Your whole case turns on or be subjected to discrimination under any education program or activity. Correct. You cannot read out of the case any education program or activity. Ah, I see. I apologize. So that's a different question for me. That's a different question, I believe. What program or activity means under the third prong of what type of discrimination is prohibited? Program or activity clearly covers activities on campus, including residential life. That's why a lot of Title IX campus-based cases where the rapes occur... So you're reacting to the rape as opposed to the aftermath of the rape? Well, under that third prong, all we have to show is that she was subjected to discrimination under a program or activity, if I can finish up. And that would include their grounds, their campus, their dorm rooms, because the tort standard is whether they had substantial control. That's where that has been construed. But she didn't allege that she, because of this incident, that she failed to go back and avail herself of any of those. So it seems you're back to saying that it's the rape itself that they're responsible for. There are two types of claims. One is the discrimination that happened in the form of the rape. The other is the deliberate indifference, which we argue is also intentional, in the aftermath, because they were mandated to respond in a certain way, and they didn't. But then, certainly on the first one, I look back at your brief as I'm sitting here, and it said you did allege an entirely separate Title IX claim based on a pre-assault claim. And then you said the district court did not address that claim, and DOE does not abandon it here, period. That's the intentional discrimination claim based on their policies that are facially discriminatory. That's correct, Your Honor. That's a separate claim. That doesn't preserve an argument. And then on your second point, I don't see any causal nexus between how the post-rape assault was conducted by Brown and any harm to your client. There isn't what's the only harm that you point to as an arguable nexus is her withdrawing from Providence College. They're mandated to comply with Title IX. The harm is in their noncompliance. That's what civil rights law is for. That's not how we do... What's the thing that renders you liable? Was there harm, and is there a causal nexus between the two? Right. And the specific harm that is required for us to allege is harm to her access to education, not education at Brown. And she has suffered very serious harm to access to education at Providence College as a direct result of not only the rape, but their failure to do anything. She had to quit school. That's as serious a harm to education as it gets. I think we appreciate your attempt to respond to us. Mr. Bender? Good morning. May it please the Court. Thomas Bender for Brown University. I think it's good to start back at the beginning. We filed a Rule 12c motion to dismiss their complaint, and we did so based upon the standards announced by the Supreme Court in the cases of Gebser and Davis, which outlined what Justice O'Connor called the contours, what I would call the elements, that are required to hold an educational institution responsible for sex discrimination. And I think it's also important to realize that Title IX is about educational injury that's caused by a funding recipient's intentional sex discrimination. It's not specifically about a sexual assault, but when a sexual assault occurs on a campus, Title IX is concerned with the effect of that assault on the victim's educational interests. And we, under Gebser and Davis, we argued that their post-assault claim failed because Brown University did not have any authority to control the movements of her assailants. Yes, I don't think that argument is very strong, actually. You heard the series of questions we put to Ms. Murphy. Yes. We're faced with an allegation that the complaint says you had a disciplinary process. Right. She attempted to use it. You at Brown said she was within the group that could use the disciplinary policy, and then you failed to do anything. So why is that claim per se excluded? Because we did not have the authority to control the movements. Oh, is it a causation argument? That if you had, let's assume hypothetically, you had sanctioned the three young men involved in this, that may be expelling them and telling them not to come on campus. Why isn't that a sufficient discipline activity that could have affected an educational program or activity? The three malfactors are gone. They're gone from the Brown University campus. Her claim was that she, a post-assault claim, is based upon- Let's assume that it's a non-student who was there to visit the campus at the invitation of the campus, that a young woman gets raped, and then the school fails to take any disciplinary action against those who raped her. What would your argument be? My argument would be the Eighth Circuit decision in KT v. Culverton-Stockton College, which is precisely the situation that you have examined. Well, then you would disavow the district court's holding, wouldn't you? No, I would not. Because there is a difference. She has mentioned, and you have mentioned, that Brown University policies indicate that visitors are protected. That's not the same thing as saying that the visitor has a Title IX cause of action under the requirements of Gebser and Davis. We expended the last portion of our brief on explaining that. Let me understand that. Brown puts up a sign that says, All students protected under Title IX from race discrimination. All men will be protected when they come onto the campus as visitors, if they're not students. But women visitors, take your chances. That's the sign that's at the Brown entrance. Is that a Title IX violation, if a woman comes on campus and then is- or, behold, she wasn't a student, so she took her chances? A Title IX violation under Gebser is when the school has actual knowledge that discrimination is occurring on its campus. It has the ability to remedy it. Okay, we can see where you're going, but let's put the rape aside and your claim that you have no foreknowledge or warning. You were, in fact, told about the rape in exquisite detail, and yet the- and you chose to bring this on motion to dismiss and not on summary judgment, so we don't know what Brown's story is about what it did in response to the complaint. We just have an allegation we have to take as true that Brown essentially did nothing about this complaint. Why isn't that discrimination under any education program or activity? The failure to follow your own policies. Because Davis says specifically that you have to have the authority to remedy the discrimination before you begin to- I just questioned you on that. If you had expelled these guys, they wouldn't be on the campus anymore. People wouldn't fear- female visitors wouldn't fear coming on. And I told you I didn't think that argument got you as far as you wanted to. Well, you're right you are, but that doesn't have- that is distinct from the injury that is alleged by Ms. Doe. All right, so that's the causation argument that Judge Kayada and I were trying to get at, that she wasn't denied access to Brown in any form whatsoever. Even if her situation was, and I will accept this, that it interfered with her ability to go to classes at Providence College, expelling the assailants from Brown University, her allegations were that she was in fear of the fact that she might meet Brown University students and or friends of the assailants on the Providence College campus or in the general area of Providence. And note that she did not- So what are you saying? She didn't say it was at Brown? And if she had said it was at Brown, it might have made a difference? Let's assume that the complaint alleged that she couldn't have access to Brown because she was afraid of stepping on that campus after the school did nothing about this situation. Let's assume the complaint had actually alleged that. What is Brown's position? Well, I would say that that is a very different case because you might be talking about a type of admissions policy. But what I would say is that, and what we tried to make clear in the brief, is that Brown University, if it had knowledge, despite the fact that we might not have any liability under Title IX to- But you did have knowledge once the rape happened and she complained. Right, and what I'm trying to say is that Brown would not just sit on its hands and do nothing if it had knowledge that there was a rapist on the Brown University campus because they would have a responsibility- Let's assume, I think you need to assume, that they had knowledge that there were rapists on the- So let's assume the rape is reported, that it's very convincing detail, and that Brown intentionally just does no meaningful investigation. That's sort of what's being alleged here. That's exactly what's being alleged, yes. And so, as a result of that, she doesn't- There is not the type of proceeding that Brown would have provided if this had been a non-sexual assault claim. I think that's the theory. Assume all that's correct, what's- And it applies to non-students, the court's wrong about that below. Then what's your argument? Well, if we did nothing about it, then we would be opening ourselves to a claim by another student, a Brown University student, and potentially another person who might be coming on the campus- Who might be deterred from coming on the campus. Or who might have become on campus not knowing that there is a sexual predator on the campus and that we were deliberately indifferent about that. We would be opening ourselves to liability for that. That's the pre-assault type of claim. If you have knowledge of a person who has a propensity for this or has assaulted somebody in the past and you are deliberately indifferent to that and they sexually assault somebody else, then you can be responsible to that person for the sexual assault. You keep going back to the pre-assault claim, but we're actually questioning you about the post-assault activities once the school gets notice. Are you saying it takes more than one? No, I'm saying that the injury in a post-assault claim is not the sexual assault itself because we haven't had knowledge of it. Agreed, it's your failure to do anything about it. I think you seem to be saying, if I'm understanding you correctly to reduce it to its essence, that taking the hypothetical I just asked you, I think you're saying you could well be liable to Brown students or others coming onto the Brown campus, but you're not liable to Providence College or UNH students. I'm not saying- Who have no inclination to come on your campus. I guess I'm trying to show that we would have possible, in a pre-assault type of situation, we would have possible liability. You're confusing this with the pre-assault, okay? Okay. We're just assuming there's an assault, it's fully reported, Brown announces we're not really interested in investigating these under Title IX, so we're not going to investigate this serious charge. That's the hypothetical. I thought you were saying Brown, female students at Brown, could claim that Brown is creating a risk for them and making the campus in-hospital to them, but non-students who weren't going to come onto the campus couldn't. Well, actually, I guess if I may, I need to look at the actual allegations of the complaint because the typical post-assault claim is for a hostile education environment. In other words, the university gets knowledge that there's a sexual assault. It's deliberately indifferent. It takes no action on that. The injury that the victim suffers, the educational injury that suffers, they have to share the campus with their assailant. They have to go to the same classes, they have to go to the same dormitories, they have to go to the same dining hall. They might even leave school. That's the injury, that's the post-assault injury that she has claimed. But she's claiming that it occurred at Providence College and in the general area of Providence. And what we argued and what the trial justice held below was that Brown University had no authority to control the movements of the assailants outside of Brown University. We couldn't control their movements in Providence. We couldn't control their movements on Providence College. Providence College could issue no trespass orders about them to keep them off the campus. And as I said, I want to point out again that when she articulated her fear, her fear was of Brown students and or associates of the assailants. It wasn't a fear of the assailants. I think you're saying that Brown could be liable to someone who, a woman who wanted to be on the campus but could not be liable to a woman who feared she might be assaulted by them off campus at Providence College. I'm not sure that I'm willing to go far to accept the first part of your hypothetical that we might be, it is possible that we could be liable if there was somebody who wanted to come to our campus. If she wanted to come back to our campus to avail herself of the educational program. I'm not sure about this result, but I'm not investigating them. So if she decided I'm not going to go there, I'd be threatened. Right. Okay. That's not the allegations in this case, though. What about her claim that there's a distinction in the disciplinary policy between sex harassment and other things? What her complaint actually says over and over again is that she doesn't necessarily articulate in the complaint what those Title IX standards are, but there are no standards that are in Section 1681. There are standards that are in the Code of Federal Regulations, but Gebser specifically held that a violation of the standards that are set forth in the Code does not necessarily mean that a school is deliberately indifferent to asexual assault or sex discrimination. Yeah, not necessarily mean, but we're here on a motion to dismiss, which you brought. That's correct. May I just finish the answer to the question? Yes, sure. Well, and as a matter of law, simply saying that we did not comply with Title IX standards is insufficient to show that we were deliberately indifferent, because a school that might not follow all of the regulations to a T could still take reasonable precautions, reasonable actions to help that individual. Okay, got it. Thank you. Thank you, Your Honor. Just a couple of things. One is to follow up on the question about must there be denial of access to education after the fact. Is that part of our burden of proof? And if that were true, then everyone who is brutally assaulted on graduation day on Brown's campus would have no cause of action ever, including Brown's own students, because there would be no way to prove that that person was subsequently denied access to educational services. So that obviously makes no sense. Unless it was a pre-assault liability. Right, but I'm talking about with regard to the after the fact. Let's take that. Someone's graduating. The day of graduation, they're sexually assaulted. They then graduate and move back to California from where they were. Right. How is that person harmed by Brown's failure to follow up on that assault? They still have to comply with Title IX. I'm not talking about liability. I'm asking a very simple question. In that hypothetical, how is that person harmed by what Brown didn't have to do? Well, I'd say two things. Number one, we don't have to prove that they suffered an educational injury after the fact. That's not a mandatory proof of the claim. You have to prove a causal connection between the act that rendered someone liable and the injury that's claimed. Correct. So that has to be an injury. So there's a clear causal connection if they do nothing, which is what they did here. Are you saying the injury is the denial of the abstract interest in seeing a remedy being brought to bear? Your Honor, I would not call the right of redress an abstract interest. It is an important remedy. Well, it's an important remedy, and it's a right. There is a right under the regulations to redress, and it is a right that must be equitable. And the right to redress is a part of the remedy to which the victim is entitled. Part of the importance of that remedy is because it would render everyone without a cause of action if they are, in fact, brutalized on the day of graduation. That includes Brown's own students. That can't be what Title IX stands for. Judge Murphy, there are obviously criminal penalties that would attach under state law to such conduct. The question here is whether Title IX was meant to apply to the situation you're talking about in a way that would create a private cause of action. Well, I think that Davis speaks to that because it addresses the nature of sexual assault as not only a form of sex discrimination, but a per se severe form. And that has been covered by Title IX for a very long time. Whether a school can be held liable before the fact for something about which they know nothing, obviously they can't. But they can be held liable for intentional discrimination if they erect a policy that is facially discriminatory because it subjugates and segregates. Thank you.